Tucker, P.
I do not think the principles of this case difficult to adjust. But the amount due from the appellee to the appellants is not so easily ascertained.
The first question of importance is the measure of the recovery. Is the appellant entitled to interest upon his advances, or must he sit down contented with his principal?
"When a borrower comes into equity seeking relief against usury, he is, by the principles of the court, bound to do equity' by paying up both principal and interest. Our act of assembly, however, provides that any borrower may exhibit his bill against the lender, and compel him to discover upon oath the money lent, and if thereupon it shall appear that there was usury, the lender shall be obliged to accept his principal money without interest. 1 Rev. Code, ch. 102, § 8, p. 374. I incline to think that wherever a case' is strictly within this section, and the borrower insists on its protection, he can only be compelled to pay the principal; and that herein the principle of equity is modified by the statute. But where a case is not within the third section of the act, or where.its protection is waived, the principles of equity have the strictest application. Such is the case of a bill filed to recover back what has already been paid. In this case it is now well established that the borrower can only recover back the usurious interest; thus leaving to the lender the enjoyment of his legal interest, as well as his principal.
The case before us I take to be not within the third section of the act. It is certainly not within its letter. The bill here is not exhibited against the lender, but against his representatives. The bill under the statute must be exhibited against the lender himself, and call upon him to discover the money lent. If the plaintiff rests upon the disclosure of his adversary, he shall pay only the principal, and the usurer shall re *127 ceive no more. But if he declines, during the usurer’s lifetime, to exhibit his bill, and to afford him an opportunity of explaining the transaction, and of 'shewing what is justly due, it may well be doubted whether it was designed that he should be absolved from the payment of any portion of what is justly due. Moreover, the usurer being dead, and it being no longer possible that the penalty can fall upon the guilty head, there would be much reason for distinguishing the innocent representative from his rapacious ancestor. He, at least, has done nothing which forbids him to look for sheer justice at the hands of a Court of Equity.
Be this as it may, there is another ground on which the case may securely stand. The plaintiff in his bill clearly puts his case upon the general principles of equity, and excludes it from the operation of the third section. His prayer is, that “ all compound, illegal and usurious interest may be expunged; that he may have such relief as his case may require and justice may dictate ; and that all persons may be released from the penalties of the statute.” I can understand this in no other way than as expressing a willingness to pay principal and legal interest. That is what justice dictates, and what every honest man will do. And shall we reject the plaintiff’s proffer to be honest? Shall we, by a forced construction of the prayer of his bill, interpret him to refuse to pay what he justly owes? Shall we really enter into the views of his counsel, and construe a prayer to expunge illegal interest, as a prayer to expunge all interest whatsoever ? and this too upon the singular hypothesis, that in usurious contracts, even legal interest becomes illegal? I think not. And if, as I conceive, the plaintiff is fairly to be understood as waiving the penalty, and proffering to pay principal and interest, a Court of Equity will not be so eager to-enforce a forfeiture, as ,to compel the defendants to receive their principal only, and leave the plaintiff' in *128 possession of the interest which, upon its own principles, he ought to pay.
The second question to be settled before we enter upon the facts, is as to the effect of the bonds as evidence. It cannot be denied that the bonds, as securities for money, are void. It cannot be denied, moreover, that where there are manifest signs of fraud (or usury) in the obligee, he ought to be put to the proof of actual payment. 3 P. Wms. 289. Yet this general rule admits of exception or modification. For where, as in this case, a borrower lies by until the death of the lender, and then calls for proof of the moneys advanced, a court of justice would be cautious in the application of the rule. But where the borrower has moreover taken up all the original evidences, as is the case here; where he has, therefore, all the means of explanation in his own hands, yet fails to make it; where he comes into equity asking relief, and yet omits to set forth the money borrowed, so that equity may lay him under the customary terms of paying the amount with interest, I cannot think the rule could fairly be applied. If he has not furnished in his bill a statement of facts, within his own knowledge, and resting upon documentary evidences which have been delivered up to him, so as to enable the court to administer its justice between the parties, he cannot complain that it should look to the evidences under his own hand for proof of the facts. And where, as here, he has lain by till the lender’s death, he could with no show of reason expect to throw the onus probandi upon those who were not actors in the transaction, and are uninformed as to its character. The bonds in this case must therefore be resorted to as evidences (subject indeed to contradiction and explanation) of the amount which has been loaned.
In this case, however, there can be no difficulty. The plaintiff does not pretend that he did not receive *129 large advances from the defendants’ intestate. But he alleges that in both the bond for 3,000 dollars and that for 752 dollars 57 cents, usurious interest was included, and moreover compounded. The usury was 12 or 12J per centum; that is, 6 or 6§- in addition.to legal interest. ~We are of course left to infer that the residue-of the bonds was composed of the advances. If, then, we purge the bonds of the .12 per cent, and of com-, pound interest, we get the true amount loaned. And this is the more clear when we look to the prayer, of. the bill, which is only to expunge the illegal and compound interest, and sets up no pretence to scale the bonds because they falsely represent in other respects the amount due.
Let us, then, from- all the sources of information furnished by the record, endeavor to discover what the appellants are entitled to demand. In the obscurity hanging over the transactions, it will be impossisible to ascertain, this with certainty. Approximation is all we can hope for. And here, first observe, that as all the obligations are payable on demand, there can be no prospective usury in any of them. And as to the usurious interest accruing upon the, several sums, I am of opinion that it was not includedjn the bonds of 3,000 dollars and 752 dollars 57 cents. Bor the scheme of the parties was to keep the usury separate and distinct, lest the bonds themselves should be tainted by it. This appears from the bonds of £ 7 12 5, which the bill says was exclusively for interest, which, according to the terms of the loan, was calculated up to March, 1820. It also yet more clearly appears from the bond of 63 dollars, which is distinctly stated to be for interest not put into the large bond. Of what it was made up, we can only conjecture. It was probably the balance, at its date, of the whole extra interest - account.
Taking the bonds then as containing no interest, the *130 matter probably would stand thus r [Here tbe president entered into a statement of the account between tbe parties.]
Brooke and Cabell, J. declined expressing any. opinion on tbe point, whether tbe third section of tbe statute against usury extends to tbe case of a bill' filed, after tbe death of tbe lender, against bis representatives. "With that reservation, they concurred in tbe opinion of tbe president.
Tbe decree entered by the Court of Appeals was as follows:
“ Tbe court is of opinion that tbe transactions set forth in tbe bill were usurious, and that tbe bonds of 8,000 dollars and 752 dollars, though they are believed to contain no usurious interest in themselves, yet, having been given for money loaned on usury, are within tbe statute, and void as securities for money. But tbe court is further of opinion that as tbe borrower, at tbe successive settlements, got into bis bands tbe documentary evidences of tbe transactions, and has failed to set forth tbe amount borrowed, tbe bonds above mentioned must be received as evidence, subject however to contradiction and scrutiny, and to be purged of usury, if it bad appeared (which tbe court does not think) that their amounts were in any part composed of illegal interest. And tbe court is further of opinion that tbe bill of tbe appellee not being within tbe third section of tbe statute of usury, be is only entitled to relief upon tbe terms of paying principal and interest, and that tbe amount now due, after deducting tbe proceeds of sale by tbe deputy marshal under tbe decree made in this cause, is 1808 dollars and 72 cents, with interest thereon at tbe rate of six per centum per annum from tbe 23d day of February, 1829, till paid, for which sum tbe appellants should be permit *131 ted to proceed.” Therefore, decree reversed with costs. “ And this court proceeding, &c., it is further decreed and ordered, that the injunction awarded the appellee in the cause he dissolved as to the sum of 1808 dollars 72 cents, with legal interest thereon from the 23d day of February, 1829, till paid, and perpetuated as to the residue, and that the appellants be allowed to enforce their deeds of trust on the property not already sold by the marshal, so far as may he necessary for the payment of the said sum of 1808 dollars, 72 cents, with interest as aforesaid, and the costs attending the sale: ” and that the appellee recover HIS COSTS EXPENDED IN THE CHANCERY COURT.: and Circuit Superior Court.